IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIE GENE GULLEY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:06-cv-131 |
| | ) | |
| v. | ) | Judge Kim R. Gibson |
| | ) | Magistrate Judge Amy Reynolds Hay |
| SCOTT HAYMAKER, ET AL., | ) | |
| | ) | Doc. 64 |
| Defendants. | ) | |
| | ) | |
| | ) | |

REPORT AND RECOMMENDATION

I.    RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 (Doc. 64) be granted.

II.   REPORT

Willie Gene Gulley, Jr. ("Plaintiff") has filed a § 1983 civil rights action against three Johnstown City police officers, Scott Haymaker ("Haymaker"), Doug Kumar ("Kumar") and Donald Robertson ("Robertson"), and John Does 1-6 (collectively "Defendants"), alleging that the Defendants unlawfully searched and seized his trash in effectuating the search of Plaintiff's house and in effectuating his arrest and thereby violated Plaintiff's constitutional rights. (Doc. 3). Presently pending before the Court is Defendants' Motion for Summary Judgment. (Doc. 64). For the reasons stated below, it is recommended that said Motion be granted.

A.    Procedural History

Plaintiff, who at the time of instituting this civil rights action was a prisoner at the Cambria County Prison, is proceeding pro se and in forma pauperis, hence, his complaint has been filed at Doc. 3. (Doc. 3). The Defendants filed a Motion for Summary Judgment (Doc.

64), a Statement of Material and Undisputed Facts (Doc. 65) and Brief in Support (Doc. 67). In response, Plaintiff filed his Statement of Facts (Doc. 68) and Plaintiff's Objection to Defendant's Motion for Summary Judgment (Doc. 72). Additionally, Defendants filed a Reply Brief responding to several issues raised by Plaintiff's Objections. (Doc. 73) Finally, Plaintiff filed what is, in essence, a sur-reply. (Doc. 74). The Defendants' Motion for Summary Judgment is now ripe for disposition.

B.     Standard of Review - Motion for Summary Judgment

Summary judgment is warranted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Public Service Electric & Gas Company, 364 F.3d 135, 140 (3d Cir. 2004). When the moving party has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). See McGreevy v. Stroup, 413 F.3d 359, 363-64 (3d Cir. 2005). In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Matreale v. New Jersey Dept. of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007), cert. denied, ___ U.S. ___, 128 S. Ct. 899 (2008).

C.    The Complaint and Summary Judgment Record

At the outset, the Court notes Plaintiff's violation of this Court's Local Rule 56.1.C.[1]  In support of their Motion for the Summary Judgment, Defendants filed their Statement of Material and Undisputed Facts.  (Doc. 65).  The Court ordered Plaintiff to file his response to the motion and to comply with Local Rule 56.1.C., setting forth the precise language of the rule.  (Doc. 69).  Although Plaintiff filed a document titled "Statement of Facts,"  it is clear that this statement does not conform to the requirements of Local Rule 56.1.C.   Plaintiff's Statement of Facts merely informs the Court that he has limited knowledge to defend his case, and fails to admit or deny any of the allegations contained in Defendants' Concise Statement of Facts.   (Doc. 68).  Local Rule 56.1.E. sets forth the consequences for failure to comply with Local Rule 56.1.C. as follows:

**E.  Admission of Material Facts.**  Alleged material facts set forth in the

---

[1]  Local Rule 56.1.C. states in pertinent part:

**C. Opposition Requirements.** Within 30 days of service of the motion for summary judgment, the opposing party shall file:

**1. A Responsive Concise Statement:** A separately filed concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by:

(a) admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material;
(b) setting forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety (as to whether it is undisputed or material), with appropriate reference to the record ... ; **and**
(c) setting forth in separately numbered paragraphs any other material facts that are allegedly at issue, and/or that the opposing party asserts are necessary for the court to determine the motion for summary judgment[.]

W.D.Pa. L.R. 56.1.C.(1)(2008)(emphasis added).

> moving party's Concise Statement of Material Facts or in the opposing
> party's Responsive Concise Statement, which are claimed to be
> undisputed, will for the purposes of deciding the motion for summary
> judgment be deemed admitted unless specifically denied or otherwise
> controverted by a separate concise statement of the opposing party.

W.D.Pa.L.R. 56.1.E. (2008). Plaintiff was apprised of these consequences in the Court's Order.

(Doc. 69). Thus, for the purpose of the instant motion, the facts, as set forth in Defendant's

Statement of Material and Undisputed Facts (Doc. 65), are deemed admitted by Plaintiff, in

accordance with L.R. 56.1.E. Accordingly, the Court gleans the following key facts from the

record before it.

On October 25 and October 31, 2004, the Johnstown Police pulled trash from adjacent to

the curb at 1 Millard Place, Johnstown, Cambria County, Pennsylvania. During an inventory of

the trash, Haymaker, a patrolman with the Johnstown Police Department, discovered the

following items:

> a.    Approximately 66 plastic bags with the corners removed along with two
>       larger plastic bags containing marijuana residue;
> b.    Several items of marijuana in the baggies;
> c.    Envelopes addressed to Nikkia Hinton "Hinton" with return address name
>       of William Gulley ("Gulley");
> d.    Envelopes with the return address name of Tyrone Williams;
> e.    Picture of Gulley;
> f.    Mail with the address of 1 Millard Place, Gulley's Address; and
> g.    Empty box from a closed circuit TV camera.

(Doc. 65 at ¶ 18). Robertson examined the items discovered by Haymaker during the above

mentioned trash pull, and contacted Chief of Police Craig R. Foust ("Foust") and District

Attorney Don Jared ("Jared") about same. (Doc. 65 at ¶¶ 23-24). Next, Robertson met with

Jared and prepared an application for a search warrant for 1 Millard Place, which Jared ultimately

approved. (Id. at ¶ 25). Foust, Jared and Robertson presented said application to Judge Swope

of the Court of Common Pleas of Cambria County. Judge Swope approved the application for a

search warrant for execution day or night, but not later than 2:00 a.m. on November 2, 2004.  (Id. at ¶ 28).

Accordingly, on November 2, 2004, between midnight and 2:00 a.m., Robertson, Haymaker and other officers of the Johnstown Police Department/Richland Township SERT TEAM executed the search warrant on 1 Millard Place, Johnstown, Pennsylvania.  (Doc. 65 at ¶ 39; Doc. 66-3 at ¶ 12; Doc. 66-4 at ¶ 7).  As the officers approached the residence, flash bags were deployed as a distraction.  (Doc. 66-3 at ¶13; Doc. 66-4 at ¶ 8).  Prior to entering the residence, Haymaker opened the front screen door and knocked on the side of the house while simultaneously announcing in a clear loud voice, numerous times, "Police, Search Warrant." (Doc. 65 at ¶ 40; Doc. 66-4 at ¶¶ 9-10).  After receiving no response, the officers used a ram to force entry into the residence.  (Doc. 65 at ¶ 41).  Haymaker continued to announce in a clear, loud voice "Police, Search Warrant" while the officers were forcing entry into the residence. (Doc. 66-4 at ¶ 16).  During the course of these events, Plaintiff was asleep in the basement of the residence.  (Doc. 65 at ¶¶ 42, 48).

Once inside the residence, Haymaker proceeded to the basement door and announced, three times, in a loud clear voice for anyone located in the basement to come forward.  (Doc. 66-4 at ¶ 19).  After the third announcement, Plaintiff appeared.  (Id. at ¶20).  Plaintiff was permitted to get dressed, was handcuffed, then taken out of the residence, at which point he was read his Miranda Warnings, informed of the existence of a search warrant, and shown a copy of same. (Doc. 65 at ¶ 51; Doc. 66-3 at ¶ 15).  Shortly thereafter, Plaintiff began having chest pains and was transported to the hospital via ambulance.  (Doc. 65 at ¶ 52; Doc. 66-3 at ¶ 16).

The officers conducted a search of the residence at 1 Millard Place.  (Doc. 65 at ¶ 58). Plaintiff was not present during this search. (Id.).  The officers located the following items during

the search: (1) two small bags of marijuana in the basement along with plastic baggie corners; (2) several plastic baggies in the side yard; and (3) a vacuum type bag filled with more plastic baggies with the corners removed and a small baggie containing suspected marijuana in an adjacent structure. (Doc. 65 at ¶ 55). As well, officers retrieved $294 from Plaintiff's person. (Id.).

As a result of the items discovered during the search, Haymaker filed state drug related charges against Plaintiff. Specifically, Plaintiff was charged with the following crimes: (1) Criminal Conspiracy, 18 Pa. C.S. § 903(a)(1); (2) Possession of Drug Paraphernalia, 35 P.S. § 780-113(a)(32); (3) Possession of Controlled Substance, Drugs, Device or Cosmetic, 35 P.S. § 780-113(a)(16); and (4) Manufacture of Controlled Substance, Drug, Device or Cosmetic, 35 P.S. § 780-113(a)(30). (Doc. 66-4 at 7-8). However, these charges were nolle prossed after Plaintiff was indicted in the federal system for a previous crime. (Doc. 65 at ¶ 14).

D.   Discussion

Plaintiff appears to be alleging that Defendants: (1) unlawfully entered his home; (2) had no probable cause to charge him with a crime; (3) failed to return his property; and (4) used the state criminal charges as a means to hold him in prison for the federal government. (Doc. 3; Doc. 66-2 at 89). Additionally, Plaintiff appears to assert that the search of his trash was unlawful. (Doc. 72, ¶ 1). Accordingly, it appears that Plaintiff is bringing suit pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Fourth, Fifth and Fourteenth Amendment rights. Defendants contend that Plaintiff has failed to state a claim for relief against them and, even if a claim has been successfully asserted, they are entitled to qualified immunity. (Doc. 67). The Court will address Plaintiff's claims, in turn.

1.   Section 1983 Claims

Section 1983 of the Civil Rights Act provides in pertinent part:

> Every person who, under color of statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof of deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

42 U.S.C. § 1983. Section 1983 is not a source of substantive rights but provides a vehicle by which violations of federal law committed by state actors can be vindicated. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). Thus, a plaintiff asserting a civil rights violation under § 1983 must establish (1) the deprivation of a right secured by the United States Constitution or federal law; and (2) that the alleged violation was committed by a person acting under color of state law. [2] Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3rd Cir. 1995)).

### a. Fourth Amendment Claims

The Fourth Amendment provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Plaintiff alleges that Defendants unlawfully (i) pulled and searched his trash, (ii) searched his residence, (iii) seized his property and (iv) arrested him. (Doc. 72).

### i. Pull and Search of Plaintiff's Trash

Construing Plaintiff's complaint liberally, as this Court is required to do, Plaintiff appears

---

[2] Defendants appear to concede that they were acting under color of state law. (Doc. 67 at 14).

to dispute the constitutionality of the search of his trash because the officers did not have a search warrant. (Doc. 3; Doc. 72 at ¶ 1). During his deposition, Plaintiff conceded that the trash pulls were lawful and stated that he is not pursuing any claims related to the pull and search of his trash. Specifically, Plaintiff indicated:

> Q:   Okay. So where your lawsuit begins is with the trash pulls going forward?
>
> A:   Yeah.
>
> ...
>
> Q:   Yeah, we will get to that, because I did see that. But let's stay with these trash pulls, though. It is your understanding of the law they [the police] needed probable cause in order to take your trash?
>
> A:   No, no, no. I understand the law. I know that once I put it out there, it's outside, it's like the public. They can do whatever they want to do. I understand that.
>
> Q:   So you don't dispute that the trash pulls were lawful, you just feel that they were harassing you?
>
> A.   Yes, I feel that they was harassing me.
>
> Q:   Okay. But you agree that if it was at the curb, they could take it?
>
> A:   That's what the law says, but I don't agree with it personally. But that's what the law says.
>
> ...
>
> Q:   Okay. But do you have any specific claims to the trash pulls, or does it all start with from when [the police] broke down your door and gone forward?
>
> A:   From my door, broke down, going forward.

(Doc. 66-2 at 55-57). Accordingly, it appears that Plaintiff has abandoned his claim that Defendants unlawfully pulled his trash.

However, assuming *arguendo*, that Plaintiff did not waive his Fourth Amendment trash claim, the Court finds that the trash pulls in question were lawful. The United States Supreme Court in <u>California v. Greenwood</u>, 486 U.S. 35 (1988), held that the Fourth Amendment does not prohibit warrantless searches of garbage that has been left for collection outside the curtilage of

one's home.  Specifically, the <u>Greenwood</u> Court reasoned that

> ...respondents placed their refuse at the curb for the express purpose
> of conveying it to a third party, the trash collector, who might
> himself have sorted through the respondents' trash or permitted
> others, such as the police, to do so.  Accordingly, having deposited
> their garbage 'in an area particularly suited for public inspection
> and, in a manner of speaking, public consumption, for the express
> purpose of having strangers take it' respondents could have no
> reasonable expectation of privacy in the inculpatory items they
> discarded.

<u>Greenwood</u>, 486 U.S. at 40-41 (<u>quoting</u> <u>United States v. Reicherter</u>, 647 F.2d 397, 399 (3d Cir.

1981).  Thus, the Court held that as there was no Fourth Amendment violation, the evidence

recovered from the trash could be used to support a search warrant application.  <u>Id.</u>  <u>See also</u>

<u>United States v. Segura-Baltazar</u>, 448 F.3d 1281, 1288  (11th Cir. 2006)(Court agreed that

"placing trash in a location where it is routinely removed by trash collectors, on the day

designated for trash collection, lessens the reasonableness of a homeowner's expectation of

privacy); <u>United States v. Long</u>, 176 F.3d 1304, 1309 (10th Cir. 1999)(considering the fact that

defendant had "purposefully placed the trash bags ... for collection" in the course of finding no

reasonable expectation of privacy); <u>United States v. Hendrick</u>, 922 F.2d 396, 400 (7th Cir.

1991)("Therefore, the proper focus under <u>Greenwood</u> is whether the garbage was readily

accessible to the public so as to render any expectation of privacy objectively unreasonable .... If

the garbage is placed at the curb, the public has ready access to it from the street, and in fact can

be expected to utilize that ability.").

Here, Plaintiff's complaint alleges that "Officer Scott Haymaker retrieved trash bags that

were placed on the curb directly adjacent to the residence located at 1 Milliard Pl.  Officer Doug

Kumar retrieved bags of trash from along curb of 1 Milliard Place."  (Doc. 3 at IV, C).  Further,

under oath, during his deposition, Plaintiff testified that the trash was placed at the curb for

pickup.[3]  (Doc. 65 at ¶ 15; Doc. 66-2 at 52).  Moreover, Robertson's affidavit of probable cause

stated:

> Last Sunday, October 25, 2004, Officer Scott Haymaker retrieved
> trash bags that were placed on the curb directly adjacent to the
> residence located at 1 Millard Place.  These trash bags were
> apparently placed out for trash pick up ....  Trash pickup on Millard
> Place occurs on Monday mornings.
>
> On Monday, October 31, 2004, in the early morning hours, Officer
> Doug Kumar retrieved bags of trash from along the curb of Millard
> Place, directly adjacent to a residence located at 1 Millard Place.
> These trash bags were apparently placed out for trash pick up.

(Doc.  66-3 at 17, ¶ 7,8).

Because the evidence establishes that Plaintiff placed his trash on the curb for the purpose

of trash collection thereby exposing it to the public, it cannot be said that Plaintiff had a

---

[3]  The Court notes that Plaintiff contradicts his deposition testimony in his later filings, in which he asserts that the trash in question was located on his property, hence, the trash pull was illegal.  (Doc. 72 at 2).  In the Court's estimation, Plaintiff is attempting to create a genuine issue of material fact by contradicting his sworn deposition testimony by merely setting forth different facts in his written filings. Given that courts have repeatedly rejected parties' attempts to create genuine issues of fact by contradicting sworn testimony by submitting later in time summary judgment affidavits, the Court declines to permit Plaintiff to do so through his later in time summary judgment briefs.  See, e.g., Czubaj v. Ball State University, 107 Fed.Appx. 664, 666-67 (7th Cir. 2004)("Czubaj's assertion in her summary judgment affidavit cannot create a disputed fact because it contradicts her deposition testimony. . . . Thus, Czubaj failed to demonstrate a genuine issue of material fact sufficient to preclude the entry of summary judgment for the University.");  McCarthy v. Kemper Life Insurance Companies, 924 F.2d 683, 687 (7th Cir. 1991) ("McCarthy cannot effectively oppose a motion for summary judgment by contradicting his own deposition testimony."); S.W.S Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996) ("[T]his court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony."); Beckel v. Wal-Mart Associates, Inc., 301 F.3d 621, 623 (7th Cir. 2002)("This allegation, however, cannot be credited, because of its inconsistency with her deposition"); Bryant v. American Airlines, Inc., 75 Fed.Appx. 699, 701 n.2 (10th Cir. 2003) ("The district court also ruled that it would not consider certain allegations in the plaintiff's summary judgment affidavit, to the extent that they contradicted her earlier deposition testimony. We agree, and have not considered these allegations, which plaintiff claims create disputed issues of fact."). Cf. Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991)("When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists. '[T]he objectives of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit.'").

reasonable expectation of privacy in his trash. Accordingly, it is recommended Defendants'

motion for summary judgment be granted with respect to Plaintiff's Fourth Amendment search

and seizure claim concerning his trash.[4]

ii. <u>Search of Residence</u>

Plaintiff contends that the search warrant was invalid because it was not based upon

probable cause. (Doc. 66-2 at 60). In particular, Plaintiff appears to be arguing that there was no

probable cause for the issuance of the search warrant because it was based on the evidence

discovered from the allegedly illegal trash pull. (Doc. 72 at 2-3).

The Court is unpersuaded by Plaintiff's argument. First, this Court has determined that the

warrantless search of the trash in question was lawful. Second, to the extent that Plaintiff is

questioning whether it was proper for Judge Swope to rely on the evidence found in the trash pull

to establish probable cause for the issuance of the search warrant, the Court finds this argument to

be without merit.

In <u>Illinois v. Gates</u>, 462 U.S. 213 (1983), the United States Supreme Court set forth the

standard governing a reviewing court's determination of whether there was sufficient probable

cause to support issuance of a search warrant:

> [t]he task of the issuing magistrate is simply to make a practical
> commonsense decision whether, given all the circumstances set
> forth in the affidavit before him ... there is a fair probability that
> contraband or evidence of a crime will be found in a particular
> place. And the duty of a reviewing court is simply to ensure that
> the magistrate had substantial basis for ... concluding that probable

---

[4] Plaintiff argues that the fruit of the poisonous tree doctrine applies to the evidence seized from his trash. The Court finds this argument meritless. "The fruit of the poisonous tree doctrine cannot be invoked to support a civil claim for damages because 'the doctrine is an evidentiary rule that operates in the context of criminal procedure and has generally been held to apply only in criminal trials.'" <u>Monaco v. City of Camden</u>, Civ. Act. No. 04-2406, 2008 WL 5381320, at *4, n.4 (D.N.J. Dec. 17, 2008)(<u>citing Jenkins v. City of New York</u>, 478 F.3d 76, 91 n.16 (2d Cir. 2007)).

11

cause existed.

Gates, 462 at 238-239.  A district court exercises "deferential review" over a magistrate's initial probable cause determination.  Id. at 238-239.  The reviewing court should only consider "the facts that were before the magistrate judge, i.e., the affidavit, and not consider information from other portions of the record."  United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001).  Generally, the existence of probable cause in a § 1983 action is a question of fact; however, a district court may conclude as a matter of law that probable cause existed if the evidence, viewed most favorably to plaintiff, would not reasonably support a contrary finding.  Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997).

The United States Court of Appeals for the Third Circuit in United States v. Deaner, 1 F.3d 192 (1993), was faced with an analogous situation.  Deaner argued that "the affidavit did not show that the garbage was constitutionally seized and therefore the magistrate judge could not rely on the marijuana or other evidence found in the garbage to establish probable cause."  Deaner, 1 F.3d at 196.  The Third Circuit reasoned that in order to defeat a claim for Fourth Amendment protection, Greenwood "require[s] the government to show that the garbage it inspected was readily accessible to the public."  Deaner, 1 F.3d at 196 (citing United States v. Hedrick, 922 F.2d 396, 398 (7th Cir. 1991).  Accordingly, the Court examined the affidavit and held that despite the fact that the affidavit did not state where the garbage was found, where it was searched, or who seized it, the magistrate could rely on the evidence discovered from the refuse in deciding whether there was probable cause to issue the warrant to search Deaner's residence.  Deaner, 1 F.3d 197.

The affidavit in this case was more detailed than the affidavit in Deaner.  Here, the affidavit stated the dates and approximate times when the trash pulls occurred, when trash collection occurs on the particular street in question, where the trash bags were located, the person who retrieved the

trash bags, and detailed the evidence discovered in the trash pull. (Doc. 66-3 at 17). Specifically, the affidavit stated that on October 25, 2004, Office Scott Haymaker retrieved the trash bags that were placed on the curb directly adjacent to the residence located at 1 Millard Place. (Doc. 66-3 at ¶ 7). In this trash pull, four empty plastic bag corners, and an empty box for a closed circuit video surveillance system were discovered. (Id.). On October 31, 2004, Officer Doug Kumar retrieved bags of trash from the same location. (Id. at ¶ 8.) This trash pull yielded approximately one half dozen large marijuana stems; approximately seventy plastic sandwich bags with the corners torn off; two larger plastic vacuum seal type bags, torn open, with marijuana residue throughout, and emitting a strong smell of unburnt marijuana; numerous letters throughout from Willie Gene Gulley, Jr., to Nikkia Hinton Gulley, some of which were sent from the Cambria County prison; an advertising flier addressed to 1 Milliard Place. (Id. at ¶ 9).

Further, Robertson's affidavit detailed his experience in law enforcement and identification and interdiction of controlled substances. (Doc. 66-3 at 13, ¶ 1). The affidavit also noted that during the relevant time period, the Johnstown Police had been conducting a drug investigation into the trafficking of marijuana and other controlled substances by Plaintiff. (Doc. 66-3 at 16, ¶ 4). Further, the affidavit stated that it had been confirmed by the Cambria County Probation Office that Plaintiff was currently on house arrest upon convictions for possession of intent to deliver marijuana and possession with intent to deliver heroin. (Id. at ¶ 5). The affidavit also provided that "the marijuana seized on November 23, 2003, for which Willie Gene Gulley, Jr., was later convicted for possession with intent to deliver was packaged" in the same manner as discovered in the above mentioned trash pull. (Doc. 66-3 at 17, ¶ 10).

The Court finds that, considering the totality of the circumstances required by Gates, and weighing the above facts and the evidence discovered in the trash pulls in a light most favorable to

Plaintiff, there was a substantial basis for the magistrate's issuance of the search warrant. See also United States v. Miller, 134 Fed. Appx. 531 (3d Cir. 2005)(warrant to search defendant's residence supported by probable cause, i.e., neighbor complained to police that they suspected drug activity, numerous sandwich bags with corners missing discovered from search of trash left for pickup in front of residence, some bags tested positive for cocaine); United States v. Harris, 118 Fed. Appx. 592 (3d Cir. 2004) (information provided in affidavit in support of application for search warrant established probable cause where officers had been involved in ongoing narcotics investigation, trash bags from trash pull contained clear sandwich bags that tested positive for cocaine, trash contained indicia that defendant resided in home, and defendant had been previously arrested for narcotics violations).

Moreover, the Court finds that there is no genuine issue of material fact as to whether the affidavit supports a finding of probable cause. Based on the foregoing, it is recommended that Defendants' motion for summary judgment be granted with respect to the claim that there was no probable cause for the search warrant of Plaintiff's residence.

Next, Plaintiff appears to contend that the search of his residence was unreasonable and violated the Fourth Amendment because he alleges the officers failed to "knock and announce" their purpose before entering. (Doc. 65 at ¶ 48). The Fourth Amendment requires that "police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry." Richards v. Wisconsin, 520 U.S. 385, 389-93 (1997). Here, prior to entering the residence, Haymaker and Robertson state that Haymaker knocked on the side of the house, while at the same time announcing in a clear loud voice "Police, Search Warrant" numerous times. (Doc. 65 at ¶40). After no response, the officers used a ram to forcibly enter the residence. (Id. at ¶ 41). During this time, Plaintiff admits that he was asleep in the basement. (Id. at ¶ 42).

Plaintiff also testified that the basement is constructed of cement blocks, and that access to the basement is located in the rear of the house through a door, which was closed during these events. (Id. at ¶¶ 43-45). Further, Plaintiff testified that he was awakened by his wife who was upstairs doing dishes and screaming "my kids is here, my kids is here." (Id. at ¶¶ 46, 47). Plaintiff admits that he does not know with absolute certainly whether the officers knocked and announce their presence, but rather is basing his contention of the fact that his wife claims that the officers failed to do so.[5] (Id. at ¶¶ 49-50).

The Court finds that Plaintiff's mere allegations are insufficient to create a genuine issue of material fact concerning whether the officers knocked and announced. The Court is persuaded by the reasoning in Abdullah v. Fetrow, Civ. Act. No. 05-1135, 2007 WL 2844960 (M.D. Pa. Sept.

---

[5] The Court notes that Plaintiff has not submitted an affidavit from his wife in support of his wife's purported assertions but, rather, is merely asserting that his wife informed him that the officers failed to knock and announce their presence. This is hearsay and is not sufficient to create a material dispute. Houseknecht v. Gettins, Civ. Act. No. 07-256, 2009 WL 113273, at *8 (W.D.Pa Jan. 15, 2009)(citing Beyah v. Coughlin, 789 F.2d 986, 990 (2d Cir.1986) ("Rule 56(e) provides that '[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.' This requirement means that '[h]earsay testimony ... that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(e) ] affidavit.' 6 Moore's Federal Practice ¶ 56.22[1], at 56-1312 to 56-1316 (2d ed.1985) (footnote omitted)"); Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir.2001) ("The Menkus affidavit appears inadequate under Rule 56(e). Not made on personal knowledge, it did not set forth facts that would be admissible in evidence.... Menkus instead relied on information from (unsworn) departmental personnel officers, and the source of these officers' information is unclear. Rather than set forth facts that would be admissible in evidence, the affidavit was instead based on inadmissible hearsay. Fed.R.Evid. 802."); Thomas v. International Business Machines, 48 F.3d 478, 485 (10th Cir.1995) ("To be sure, the nonmoving party need not produce evidence 'in a *form* that would be admissible at trial,' but the content or substance of the evidence must be admissible. For example, hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.' Furthermore, 'generalized, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment.' (citations omitted).")).

26, 2007), which relied on the United States Court of Appeals for the Seventh Circuit's decision in Molina ex rel. Molina v. Cooper, 325 F.3d 963 (7th Cir. 2003).  In Abdullah, the plaintiff admitted that he was alseep at the time of the officers' entry but claimed that he would have heard the knock and announce had they done so.  Abdullah, 2007 WL 2844960, at *8.  In Molina, the plaintiff also contended that she was asleep during the execution of a search warrant.  Specifically, the plaintiff claimed that the officers failed to knock and announce and testified that she 'awoke to 'screaming and yelling.'"  Molina, 325 F.3d at 972.   In both cases, the respective Courts held that the above assertions were insufficient to create a genuine issue of material fact as to whether the officers knocked and announced their presence.  Abdullah, 2007 WL 2844960, at *8; Molina, 325 F.3d at 972.  Similarly, in this case, Plaintiff admits he was asleep in the basement during the execution of the warrant and did not hear whether the officers' knocked and announced.  In addition, as in Molina, Plaintiff was awakened by screaming.

Accordingly, it is recommended that Defendants' motion for summary judgment be granted with respect to Plaintiff's claim that a failure to knock and announce led to an unlawful search.

### iii.  False Arrest Claim

Plaintiff's complaint alleges that "personal property was seized and never return [sic] to me and force [sic] imprisonment."  (Doc.  3 at IV, C).  Construing Plaintiff's allegations liberally, Plaintiff appears to be asserting a claim of false arrest pursuant to the Fourth Amendment.  The Fourth Amendment prohibits unreasonable seizures thereby protecting individuals from arrest without probable cause.  Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995)(citing Papachristou v. City of Jacksonville, 405 U.S. 156, 169 (1972)).  Thus, in order to establish a claim of false arrest under the Fourth Amendment, the plaintiff is required to show that he or she was arrested without probable cause.  Groman v. Twp. of Manalapan, 47 F.3d 628, 634-635 (3d Cir.

1995).  "Probable cause exists whenever reasonable trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested."  United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002)(citing Beck v. Ohio, 370 U.S. 89, 91 (1964)).  The law of the state where the arrest occurred controls whether the arrest is valid.  Id. (citing Ker v. California, 374 U.S. 23, 37 (1963)).  In determining whether probable cause exists to support an arrest, the analysis must be based upon the totality of the circumstances including "the objective facts available to the officers at the time of the arrest."  Sharrar v. Felsing, 128 F.3d 810, 821-22 (3d Cir. 1997).  "Generally, the question of probable cause in a section 1983 damage suit is one for the jury."  Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003).  However, a district court may conclude that probable cause existed as a matter of law if the evidence, viewed in the light most favorable to the plaintiff, could not reasonably support a finding that there was no probable cause.  Id. (citing Mulvihill, 113 F.3d at 401).

Plaintiff was charged with the following crimes under the Pennsylvania Crimes Code: (1) Criminal Conspiracy, 18 Pa. C.S. § 903(a)(1); (2) Possession of Drug Paraphernalia, 35 P.S. § 780-113(a)(32); (3) Possession of Controlled Substance, Drugs, Device or Cosmetic, 35 P.S. § 780-113(a)(16); and (4) Manufacture of Controlled Substance, Drug, Device or Cosmetic, 35 P.S. § 780-113(a)(30).  (Doc. 66-4 at 7-8).

Whether it would have been clear to a reasonable officer that probable cause justified the arrest requires an examination of the crimes in issue. Plaintiff was charged with Criminal Conspiracy, in violation of 18 Pa. C.S. § 903(a)(1), which provides as follows:

> **(a) Definition of conspiracy.--**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>> (1) agrees with such other person or persons that they or one

or more of them will engage in conduct which constitutes such crime
or an attempt or solicitation to commit such crime; or ...

18 Pa. C.S. § 903(a)(1). Plaintiff was also charged with Possession of Drug Paraphernalia, in violation

of 35 P.S. § 780-113(a)(32), which provides:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> (32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780-113(a)(32). In addition, Plaintiff was charged with Possession of a Controlled

Substance, Drugs, Device or Cosmetic, in violation of 35 P.S. § 780-113(a)(16), which provides:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
> (16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. § 780-113(a)(16). Finally, Plaintiff was charged with Manufacture of Controlled Substance,

Drug Device, or Cosmetic, in violation of 35 P.S. § 718-113(a)(30), which provides:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 718-113(a)(30).

In order to determine whether Defendants had probable cause to arrest Plaintiff, the court must examine the evidence available to the officers at the time of the arrest. Sharrar, 128 F.3d at 821-22; Abdullah, 2007 WL 2844960, at *9. The instant case presents a unique set of facts. Shortly after entering the residence, Plaintiff had chest pains and requested to be taken to the hospital. After being released from the hospital, Plaintiff was taken to the Johnstown Police Station. In this Court's estimation, Plaintiff was not arrested until he was taken to the Johnstown Police station.[6] Accordingly, at the time of Plaintiff's arrest, the officers had discovered the following pursuant to a valid search warrant executed at Plaintiff's residence: two small bags of marijuana in the basement along with the plastic baggie corners; $294 on the Plaintiff's person; several plastic baggies in the side yard; and vacuum type bag filled with more plastic baggies with the corners removed and a small baggie containing suspected marijuana in an adjacent structure. (Doc. 65 at ¶ 61). Based on these facts alone, the Court finds that a reasonable officer could conclude that at least one of the above listed offenses had been committed by Plaintiff.[7]

_____

[6] Although Plaintiff's freedom was restricted by handcuffs shortly after the officers entered Plaintiff's home, the Court finds that Plaintiff was detained in a reasonable manner and thus not arrested while the police were executing the valid search warrant. See United States v. Goode, Civ Act. No. 07-2269, 2009 WL 294760, at *2 (3d Cir. Feb. 9, 2009)(citing United States v. Hensley, 469 U.S. 221, 235 (1985)("... an officer does not necessarily turn an investigatory stop into an arrest by drawing a gun or applying handcuffs. During a Terry Stop, officers may take measures that are 'reasonably necessary to protect themselves and maintain the status quo.'")).

[7] The Court notes a claim for false arrest will be precluded if any crime charged by the officers is supported by probable cause. Akbar v. City of Chicago, Civ. Act. No. 06 C 3685, 2008 WL 5272463, at *3 (N.D. Ill. Dec. 12, 2008)(citing Holmes v. Village of Hoffman Estates, 511 F.3d 673, 682 (7th Cir. 2007)("[i]n this respect, a malicious prosecution claim is treated differently from one for false arrest: whereas probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, ... probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking.")).

Furthermore, considering the totality of the circumstances, including the facts stated in the affidavit of probable cause, this Court concludes that no genuine issues of material fact exist as to whether there was probable cause to arrest Plaintiff. Accordingly, it is recommended that Defendants' motion for summary judgment be granted with respect to Plaintiff's false arrest claim.[8]

### b. Fifth Amendment Claim

Plaintiff's complaint alleges that his "personal property was seized and never return [sic] to me." (Doc. 3). During his deposition, Plaintiff clarified that the officer failed to return his property, i.e., money, pictures and letters. (Doc. 65 at ¶¶71-73). Plaintiff admits that such property was seized as evidence during the search of his residence, which this Court has deemed lawful. (Id. at ¶ 74). To the extent Plaintiff is alleging that his property was unlawfully seized without receiving just compensation in violation of the Fifth Amendment, it is recommended that such claim be dismissed. As the police actions in this case are lawful, such actions do not constitute a taking under the Fifth Amendment because "items properly seized by the government under its police power are not seized for 'public use' within the meaning of the Fifth Amendment." Abdullah, 2007 WL 2844960, at *11 (citing Acadia Tech., Inc. v. United States, 458 F.3d 1327, 1332 (Fed. Cir. 2006)). Accordingly, it is recommended that Defendants' motion for summary judgment be granted with respect to Plaintiff's Fifth Amendment claim.

---

[8] To the extent that Plaintiff is alleging a claim of false imprisonment, the Court finds that there is no basis for such claim. Because a § 1983 false imprisonment claim is based on the Fourteenth Amendment protection against deprivations without due process of law, an arrest based on probable cause can not become the source of a claim for false imprisonment. Groman, 47 F.3d at 636 (citing Baker v. McCollan, 443 U.S. 137, 142 (1979)(In Groman, the court upheld the grant of summary judgment relating to claims of false arrest and false imprisonment pursuant to § 1983 against two officers because evidence demonstrated that those officers had probable cause to arrest which insulated the officers from plaintiffs' false imprisonment claims)). Accordingly, because the Court determined that Plaintiff's arrest was lawful, Plaintiff's claim of false imprisonment fails.

c. Plaintiff's Fourteenth Amendment Claim

Construing Plaintiff's allegations liberally, Plaintiff asserts that the seizure of his property violated his Fourteenth Amendment Right to due process of law.[9]  The Fourteenth Amendment prohibits a state from "depriv[ing] and person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV.

> In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate. "[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them."  Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir.1982); see also Bohn v. County of Dakota, 772 F.2d 1433, 1441 (8th Cir.1985). A due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."  Zinermon v. Burch, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).  If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.  See McDaniels v. Flick, 59 F.3d 446, 460 (3d Cir.1995); Dwyer v. Regan, 777 F.2d 825, 834-35 (2d Cir.1985), modified on other grounds, 793 F.2d 457 (2d Cir.1986); Riggins v. Board of Regents, 790 F.2d 707, 711-12 (8th Cir.1986).

 Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).  Further, "if negligent deprivations of property do not violate the Due Process Clause because predeprivation process is impracticable, it follows that intentional deprivations do not violate that Clause provided, of course, that adequate state post-deprivation remedies are available."  Hudson v. Palmer, 468 U.S 517, 533 (1984).

As discussed above, Plaintiff's complaint alleges that his "personal property was seized and

---

[9]  Because the protections afforded by the substantive due process component of the due process clause have generally been limited to "matters relating to marriage, family, procreation, and the right of bodily integrity ...", Albright v. Oliver, 510 U.S. 266, 272 (1994), and Plaintiff's claims do not involve any of these matters, the Court deems it unnecessary to engage in such analysis, and instead treats Plaintiff's claim as one under the procedural due process clause of the Fourteenth Amendment.  Parker v. Wilson, Civ. Act. No. 98-3531, 2000 WL 709484, at *6 (E.D. Pa. May 30, 2000).

never return [sic] to me." (Doc. 3). During his deposition, Plaintiff clarified that the officer failed to

return his property, i.e. money, pictures and letters. (Doc. 65 at ¶¶71-73). Here, there is an adequate

post deprivation remedy for Defendant's claim. Pursuant to Pennsylvania Rule of Criminal Procedure

324(a) :

> A person aggrieved by a search and seizure, whether or not executed
> pursuant to a warrant, may move for the return of the property on the
> ground that he is entitled to lawful possession thereof. Such motion
> shall be filed in the Court of Common Pleas for the judicial district
> in which the property was seized.

Pa.R.Crim.P 324(a). Plaintiff does not appear to have availed himself of the procedures set forth

by the Pennsylvania Criminal Rules, i.e., Plaintiff has not filed a motion for the return of his

property, nor does Plaintiff challenge Pennsylvania's procedure for the return of property. Thus, he

has failed to state an adequate deprivation. Construing the facts in the light most favorable to

Plaintiff, his arguments fail to create a genuine issue of material facts as to his Fourteenth

Amendment claims. See Parker v. Wilson, Civ. Act. No. 98-3531, 2000 WL 709484, at *7 (E.D.

Pa. May 30, 2000)(Plaintiff's Fourteenth Amendment claim pursuant to § 1983 did not raise an

issue suitable for trial because Plaintiff failed to establish that Pennsylvania's procedure for return

of the seized property was inadequate)). Accordingly, it is recommended that Defendants' motion

for summary judgment be granted to the extent that Plaintiff seeks relief pursuant to § 1983 for a

violation of his Fourteenth Amendment due process rights.

2. John Doe Defendants

Plaintiff's complaint names "John Doe 1-6" as Defendants in this action. (Doc. 3).

Defendants contend that said Defendants should be dismissed as Plaintiff has failed to properly

identify and serve process upon such individuals. (Doc. 67 at 13). In response, in Plaintiff's

Objection to Defendant's [sic] Motion for Summary Judgment, Plaintiff names four of the

Defendant John Does: (1) District Attorney Don Jared; (2) Chief of Police Craig R. Foust; (3) Detective Owens; and (4) his Probation Officer. (Doc. 72 at 6).

"In the adversarial system of litigation the plaintiff is responsible for determining who is liable for [his] injury." Arthur v. Maersk, Inc., 434 F.3d 196, 212 (3d Cir. 2006). Fictitious parties must be dismissed if they are left unidentified at the close of discovery. Hindes v. F.D.I.C., 137 F.3d 148, 155 (3d Cir. 1998); Atlantic Used Auto Parts v. City of Philadelphia, 957 F.Supp. 622, 625 (1997).

Plaintiff attempted, yet failed, to amend his complaint on three different occasions. (Doc. 11, 27, 39). In addition, discovery in this matter was extended several times so that Plaintiff had ample time to discover the identities of the six unnamed Defendants. (Doc. 23, 44). Discovery concluded on April 24, 2008.[10] Although Plaintiff unsuccessfully tried to amend his complaint, at no point during the extended discovery periods did Plaintiff seek leave of the Court to amend the caption in this case to identify the John Doe Defendants. Instead, for the first time, Plaintiff attempts to identify some of the Defendant John Does in his summary judgment briefs. Under Federal Rule of Civil Procedure 4(m), if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the Court may dismiss the complaint with prejudice as to that defendant. Fed.R.Civ.P. 4(m). It is clear that Plaintiff has failed to successfully identify the John Doe Defendants in compliance with 120 day period required by Rule 4(m). Hence, dismissal of any and all claims against the Defendant John Doe 1-6 is proper and

---

[10] Initially, discovery was to be concluded by January 30, 2007. (Doc. 21). Instead, after the second discovery extension, discovery was due by June 8, 2007. (Doc. 44). However, this proceeding was stayed on October 10, 2007 pursuant to the Soldiers' and Sailors' Civil Relief Act, 50 App. U.S.C.A. § 501, *et seq*., until 90 days after Haymaker's military service ended. (Doc. 57). Accordingly, the stay was lifted in this case on April 10, 2008, and the discovery deadline was extended until April 24, 2008. (Doc. 60).

these Defendants should be dismissed with prejudice.  See Lynch v. Hunter, Civ. Act. No. 0-1331, 2000 WL 1793396, at *1 (E.D. Pa.  Nov. 22, 2000).

Alternatively, even if the Court considers the recently named John Doe Defendants, the Court has determined that Plaintiff has failed to allege a constitutional violation.  Hence, all claims against said Defendants would be dismissed.  In addition, the John Doe Defendants would be entitled to summary judgment on other grounds.  As previously mentioned, Craig Foust, the Johnstown Chief of Police, Don Jared, the District Attorney, and Detective Owens have been identified as three out of the six John Doe Defendants.  However, Defendants Foust, Jared and Owens[11] did not personally participate in the search, seizure or arrest on November 2, 2004 that gave rise to the current suit.  Because they did not participate in the events of that date, they cannot be held liable.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A Defendant in a [§ 1983] action must have personal involvement in the alleged wrongs.").

To the extent that Plaintiff seeks to impose liability on Defendants Foust and Jared merely on the basis that they were Defendants' supervisors,  in that they approved the application for the search warrant, Plaintiff's theory of liability on the grounds of respondeat superior fails.  Section 1983 does not permit liability premised upon respondeat superior.  Rode, 845 F.2d at 1207 ("liability [in civil rights action] cannot be predicated solely on the operation of respondeat superior.").

### 3.   Plaintiff's Claim that the Defendants Used the State Criminal Charges as a Means to Hold Him in Prison for the Federal Government

Plaintiff contends that the Defendants used the state criminal charges derived from the November 2, 2004 incident as a means to hold him in prison for the federal government.  (Doc. 72

---

[11]  Except for Plaintiff's summary judgment reference, Detective Owens is not mentioned in the record before the Court.

at 5).  In response, Defendants assert that this claim fails to state a claim upon which relief can be granted.  (Doc. 67 at 12).  Initially, the Court notes that this contention does not implicate any federal constitutional or statutory right.  Nevertheless, even assuming some right would be implicated,  Plaintiff's claim would fail for the following reasons.

Here, when the November 2, 2004 events occurred, Plaintiff was on probation for unrelated drug convictions.  (Doc. 65 at ¶ 53).  Plaintiff's probation officer lodged a detainer against him.  (Doc. 65 at ¶ 54).  After Plaintiff was released from the hospital, he was taken to the Johnstown Police Station, and then was arraigned before a district magistrate.  (Doc. 65 at ¶ 55).  The magistrate set a $2,500 bond based on the criminal charges in this case.  (Doc. 65 at ¶ 56).  However, due to the probation detainer, Plaintiff was transported to jail.  (Id.).

To the extent that Plaintiff is challenging the action of his Probation Officer because he/she lodged a detainer based on Plaintiff's arrests for the November 2, 2004 charges, the Court finds that Plaintiff's claim is without merit.[12]  While the Court has not been supplied with the conditions of Plaintiff's probation, Plaintiff does not argue that being arrested was not a violation of his probation, thus Plaintiff has not met his burden for proving that he was unconstitutionally detained.  See e.g., Greiss v. State of Colo., 624 F.Supp. 450, 457 (D.Colo. 1985)(At summary judgment, "it is Plaintiff's burden to prove that he was unconstitutionally detained.").  Further, the Court finds that Plaintiff's Probation Officer would be entitled to qualified immunity for filing the detainer.  See discusssion of qualified immunity below.

Accordingly, the Court recommends that Defendants' motion for summary judgment be granted as to Plaintiff's § 1983 claims concerning his bail bond and detainer.

---

[12]  The Court previously determined that Plaintiff's Probation Officer is not properly named as a Defendant in this matter later.  See opinion at II, D(2).

4.  Immunity

Defendants raise a qualified immunity defense as well.  The doctrine of qualified immunity provides that certain officials, including police officers, performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right [ ] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); Saucier v. Katz, 533 U.S. 194, 200-01 (2001).  Furthermore, this doctrine provides not only a defense to liability, but immunity from suit.  Hunter v. Bryant, 502 U.S. 224, 227 (1991).

In analyzing qualified immunity claims for law enforcement officers' alleged violation of a constitutional right, the Court may apply a two-step inquiry.  Pearson v. Callahan, ___ U.S. ___ , 129 S.Ct. 808 (U.S. Jan. 21, 2009)(holding that Court may but is no longer required to first determine whether the facts make out a violation of a constitutional right).  In "order to survive summary judgment on grounds of qualified immunity, a plaintiff must (1) allege violation of a valid legal right and (2) demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Abdullahi v. City of Madison, 423 F.3d 763, 775 (7th Cir. 2005) (quoting Saucier, 533 U.S. at 201-02).

In the preceding analysis, the Court determined that Defendants did not violate Plaintiff's Fourth, Fifth and Fourteenth Amendment rights.  Thus, the Court does not need to address the second step, i.e., whether Plaintiff's constitutional right was clearly established.  Gallo v. Washington County, Civ. Act. No.08-0504,  2009 WL 274500, at *10 (W.D.Pa. 2009).  However, assuming *arguendo*, that the Court found a constitutional violation of Plaintiff's rights (which the Court does not), the Defendants would be entitled to qualified immunity because it would not have been clear to a reasonable officer that their actions violated Plaintiff's Fourth Amendment rights given that (1) it was reasonable to assume that Plaintiff's trash had been placed for trash collection,

thus he had no reasonable expectation of privacy since it was readily accessible to the public; (2) the officers obtained a search warrant, and under the circumstances could reasonably believe that there was probable cause for the issuance of the warrant and that they executed the warrant in a constitutional fashion; and (3) based on the items discovered during the search of the residence, in particular the items found in the basement where Plaintiff was located, it was reasonable to assume they had probable cause to arrest Plaintiff for the crimes charged. In addition, it would not have been clear to a reasonable officer that they violated Plaintiff's Fifth or Fourteenth Amendment rights concerning the seizure of Plaintiff's personal property given that it was reasonable to assume that the property was seized pursuant to a valid search warrant, thus the actions did not amount to a public taking or violate Plaintiff's due process of law.

Further, District Attorney Jared and Plaintiff's Probation Officer (whose name has not been supplied) would be subject to immunity for their actions. The United States Supreme Court has held that prosecutors are entitled to absolute immunity from liability of money damages under § 1983 for any actions taken within the scope of their duties as prosecutors. Imbler v. Pachtman, 424 U.S. 409, 432 (1976). There is nothing in the complaint or in the summary judgment record before this Court that would suggest that District Attorney Jared acted outside the scope of his prosecutorial duties. Likewise, under the circumstances, it was reasonable for Plaintiff's Probation Officer to lodge the probation detainer considering that Plaintiff had been arrested for drug related charges while serving probation. Giallorenzo v. Beaver County, Civ. Act. No. 06-0354, 2006 WL 3145126, at *7 (W.D. Pa. 2006). See also Galvan v. Garmon, 710 F.2d 214 (5th Cir. 1983) (probation officer acting on her own initiative caused plaintiff to be mistakenly arrested and incarcerated entitled to qualified immunity).

Hence, as an alternative holding, the Defendants are entitled to immunity for all their

actions.

III.    <u>CONCLUSION</u>

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4

B, the parties are permitted to file written objections and responses thereto in accordance with the

schedule established in the docket entry reflecting the filing of this Report and Recommendation.

Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

_/s/  Amy Reynolds Hay_____
United States Magistrate Judge

Dated: 4 March, 2009

cc:      Honorable Kim Gibson
United States District Judge

All counsel of record by Notice of Electronic Filing